**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

LUCILLE M.R. HERNANDEZ, Plaintiff,

v. Case No. ________________

BRENT THAUER and JOHN/JANE DOES 1-4, in their individual capacities, Defendants.

# COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983
# JURY TRIAL DEMANDED

Plaintiff Lucille M.R. Hernandez states the following claims concerning the October 27, 2023 Moto Mart encounter and ensuing custody:

Transcript references are to original pages and lines of Brent Thauer's September 22, 2026 sworn testimony before Judge Patricia Baker. The transcript is referenced rather than attached. Plaintiff will provide copies of the cited transcript pages during discovery, subject to the applicable rules and Court orders.

## JURISDICTION AND VENUE

1. This action seeks damages under 42 U.S.C. § 1983 for violations of the Fourth Amendment, applicable to state officers through the Fourteenth Amendment.

2. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). Venue is proper under 28 U.S.C. § 1391(b)(2) because the events occurred in Plover, Portage County, Wisconsin.

## PARTIES

3. Plaintiff Lucille M.R. Hernandez receives mail at P.O. Box 495, Stevens Point, WI 54481. She proceeds pro se and brings only her own claims.

4. Brent Thauer was a Plover Police detective sergeant involved in the investigation and residential warrant application. His professional address is Plover Police Department, 2420 Post Road, Plover, WI 54467.

5. John/Jane Doe 1 is the officer who threatened to shoot Plaintiff.

6. John/Jane Doe 2 is the officer who handcuffed and searched Plaintiff.

7. John/Jane Doe 3 is the officer who searched the vehicle, locked glove compartment, and bank bag and seized currency.

8. John/Jane Doe 4 is the officer who personally maintained or directed Plaintiff's involuntary station custody.

9. The Doe descriptions identify actual participants whose names Plaintiff has requested but has not obtained. Discovery may establish that an officer performed more than one role or that additional officers participated.

10. All defendants acted under color of state law. Each is sued in an individual capacity for that defendant's own acts or acts personally caused.

**FACTS**

11. On October 27, 2023, Plaintiff planned to take her minor son to his football game at Stevens Point Area Senior High School (SPASH), then pay her bills before the first of the month.

12. Kieuta Perry stopped at Plaintiff's residence and asked her to drop him off. Plaintiff told him she could not do so then because she was taking her son to his football game and paying bills afterward, before the first of the month. Perry then asked to join them, as he had joined them for her son's games before, and Plaintiff agreed.

13. Plaintiff stopped voluntarily for gas at Moto Mart in Plover. Her vehicle was parked at the fuel pump and was not being operated when officers surrounded it.

14. Plaintiff was in the driver's seat. Her son was in the front passenger seat. Perry was directly behind Plaintiff in the rear seat.

15. Plaintiff was not participating in any illegal activity with Perry.

16. Numerous officers swarmed the parked vehicle with firearms drawn while Plaintiff and her minor son were inside. Doe 1 threatened that the occupants, including Plaintiff and her son, must put their hands up or the officer would shoot.

17. Officers removed Perry and placed him in a squad car. Officers then removed Plaintiff and her 15-year-old son, handcuffed both of them, and searched both of them. Doe 2 handcuffed and searched Plaintiff.

18. Thauer confirmed the officers' drawn firearms and yelling but did not specifically recall the shooting threat. The threat allegation rests on Plaintiff's recollection. Tr. p. 26, lines 2-17.

19. Plaintiff disputes that she presented a danger justifying the shooting threat.

20. Doe 3 searched Plaintiff's vehicle, unlocked the glove compartment, opened a bank bag, and seized currency. A total of $9,460 was taken from the glove compartment and Plaintiff.

21. The funds included Plaintiff's money and family money entrusted to her. She was temporarily caring for her elderly father and acting under his power of attorney.

22. Plaintiff asserts her own ownership interest in her money and her own privacy and possessory interests in the entrusted funds. She does not bring independent claims belonging to family members.

23. Thauer testified that the cash contributed to his suspicion and residential warrant application. He later agreed it did not match particular confidential-source allegations in quantity or denominations and said he checked for a match after the encounter. Tr. p. 30, lines 1-7; p. 32, lines 9-19.

24. The personal and vehicle searches and initial taking of currency occurred before the residential warrant issued. Plaintiff alleges that no warrant or sufficient warrant exception authorized those particular acts.

25. Officers transported Plaintiff involuntarily to the Plover Police Department and held her there for several hours. She was not free to leave while Thauer prepared and obtained the home-search warrant.

26. The gas station was approximately one and a half to two miles from her residence. The challenged station confinement occurred away from the premises to be searched. Tr. p. 16, lines 3-14.

27. On information and belief, Thauer personally authorized or continued the station detention to prevent Plaintiff from returning home before the warrant issued. Doe 4 personally maintained or directed that custody. Liability rests on their own custody decisions, not supervisory rank or warrant preparation alone.

28. The allegation about Thauer rests on his sworn description of writing the warrant application, the decision and purpose of holding Plaintiff, and his explanation that this was the best course under the circumstances. Tr. p. 10, lines 1-7; p. 16, lines 15-24; p. 17, lines 19-22; p. 21, lines 6-13.

29. Thauer also acknowledged preparing a report documenting information supporting the vehicle contact and detention. Plaintiff seeks the records identifying the actual custody orders and participants. Tr. p. 28, lines 17-25.

30. Asked whether he had probable cause to arrest Plaintiff at that time, Thauer answered, "Not at that time." He confirmed she was not free to leave. Tr. p. 18, lines 2-4; p. 19, lines 11-18.

31. Thauer also described prior confidential-source information and seized currency. Plaintiff disputes that the objective facts known to, or properly attributable to, the responsible officers justified hours of station confinement. Tr. pp. 28-30.

32. A court commissioner later signed the home-search warrant. Police then transported Plaintiff home, and she remained detained until after the search. Tr. p. 18, lines 11-14; pp. 10-11.

33. Thauer identified Ted Helm as transporting Plaintiff from the station to her residence and Anthony Gischia as being with her for much of the station custody. Thauer said he himself was absent for most of that time. Tr. p. 10, lines 19-24; pp. 22-23.

34. Officers detained Plaintiff's son and later took him to SPASH for his football activity. Plaintiff experienced fear, anxiety, and emotional distress from the armed threat, seeing officers remove, handcuff, and search her minor son, and her own detention. Her son is not a plaintiff in this action.

## OFFICER IDENTIFICATION, TOLLING, AND ESTOPPEL

35. On September 21, 2026, Plaintiff emailed Plover Police requesting records of the October 27, 2023 operation, participating personnel, force, custody, searches, currency seizure, and warrants. The four photographed pages of that request are Exhibit A.

36. On October 9, 2026, Plover Police denied access to investigative records based on its public-records balancing determination concerning pending proceedings. The response stated that a property inventory was being provided and referred Plaintiff to attorney discovery and records-review remedies. Exhibit B.

37. On October 13, 2026, Plaintiff emailed Chief Ryan Fox requesting an administrative investigation and identification of officers involved in firearms, handcuffing, custody, transportation, and supervisory decisions. Exhibit C.

38. On October 14, 2026, Chief Fox acknowledged the request and said he would discuss it with legal counsel. Plaintiff replied requesting names, ranks, agencies, roles, custody orders, and existing identifying records. The photographed thread is Exhibit D.

39. Plaintiff also requested officer-identification information on October 15, 2026. She reports that an October 19 memorandum denied her October 14 and 15 requests and stated that the department would not respond further. That memorandum is described in Exhibit F but is not among the attached photographs.

40. On October 25, 2026, Attorney Dean Dietrich responded concerning internal complaint procedures. His response did not identify participating officers. Exhibit E.

41. Plaintiff prepared a further letter dated October 25, 2026, seeking reconsideration and existing records identifying the officers by their acts and roles. The letter explained the urgency of obtaining identities and preserving records. The two photographed pages are Exhibit F; the photographs alone do not establish transmission or receipt.

42. Plaintiff still lacks the names of the Doe officers, records identifying who ordered or enforced station custody, and the complete October 27 residential warrant packet. The withheld participant records are needed to name, serve, and specify the roles of the actual defendants.

43. Plaintiff invokes equitable tolling and, to the extent supported by the evidence and applicable law, equitable estoppel for any period in which nondisclosure prevented timely identification despite her diligent efforts. She requests consideration of the documented chronology, the actual impediment, and any additional evidence of diligence.

44. Any estoppel claim will rest on misleading or obstructive conduct attributable to the defendant asserting limitations. Plaintiff requests prompt identification and amendment; she does not claim that records requests or Doe placeholders automatically extend limitations or establish relation back. See Herrera v. Cleveland, 8 F.4th 493, 498-99 (7th Cir. 2021).

45. This action concerns October 27, 2023. It does not amend or incorporate the separate claims concerning the March 6, 2024 home entries.

46. The currency is the subject of Portage County forfeiture Case No. 2023CV315. This complaint challenges the initial seizure and does not seek a federal determination of title in that proceeding or duplicate recovery.

## COUNT I - UNREASONABLE PROLONGED DETENTION (Against Thauer and Doe 4)

47. Plaintiff incorporates paragraphs 1-46. This claim arises under 42 U.S.C. § 1983 and the Fourth Amendment.

48. Thauer and Doe 4 personally authorized, maintained, directed, or continued Plaintiff's involuntary station custody for hours without objective probable cause or another lawful basis.

49. The involuntary transportation and hours of station confinement amounted to an arrest-level seizure. Even if the initial vehicle contact was lawful, Plaintiff challenges the separate decision to take her to the station and confine her there for hours.

50. Plaintiff relies on the rule established before October 2023 that involuntary station custody comparable to an arrest requires probable cause, regardless of the label used. Dunaway v. New York, 442 U.S. 200, 212-16 (1979).

51. An anticipated home-search warrant did not itself authorize arrest-level confinement at the police station. The challenged confinement occurred away from the residence and before issuance; it was not detention within the immediate vicinity during warrant execution. See Bailey v. United States, 568 U.S. 186, 199-202 (2013).

52. Plaintiff challenges forced station confinement, rather than a limited restriction on entering a home unaccompanied while police obtain a warrant. See Illinois v. McArthur, 531 U.S. 326, 331-33 (2001). The later warrant did not retroactively authorize the preceding custody.

53. This seizure caused loss of liberty, fear, anxiety, and emotional distress.

## COUNT II - EXCESSIVE FORCE (Against Doe 1)

54. Plaintiff incorporates paragraphs 1-46. This claim arises under 42 U.S.C. § 1983 and the Fourth Amendment.

55. Doe 1 threatened to shoot Plaintiff during the armed surrounding of her parked vehicle, in her minor son's presence.

56. Plaintiff alleges that the shooting threat, made during the armed seizure, was objectively unreasonable in light of the actual danger she presented and the circumstances confronting Doe 1. The claim concerns the force used against Plaintiff and is assessed under Graham v. Connor, 490 U.S. 386, 396-97 (1989).

57. The claim challenges the threatened shooting of Plaintiff in the circumstances alleged, rather than treating every initial display of a firearm as unlawful. The threat caused fear, anxiety, and emotional distress.

## COUNT III - UNREASONABLE SEARCHES AND INITIAL MONEY SEIZURE (Against Does 2 and 3)

58. Plaintiff incorporates paragraphs 1-46. This claim arises under 42 U.S.C. § 1983 and the Fourth Amendment.

59. Doe 2 performed the challenged personal search. Doe 3 performed the challenged vehicle, glove-compartment and bank-bag search and initial currency seizure. Each is liable for that defendant's own conduct.

60. Plaintiff alleges that these acts invaded her bodily privacy, vehicle privacy, and possessory interests without a warrant or sufficient exception to the warrant requirement.

61. The personal search required grounds applicable to Plaintiff; her presence with Perry did not by itself authorize it. See Ybarra v. Illinois, 444 U.S. 85, 91-94 (1979). Plaintiff disputes both the grounds for the search and any claimed exception's scope.

62. The vehicle search and initial taking of currency each required a lawful basis. Finding money did not alone establish that it was contraband or evidence of a crime. Plaintiff disputes the objective grounds for taking it and seeks damages for the initial seizure, without asking this Court to resolve the pending state forfeiture.

63. These acts caused loss of privacy, interference with possession and use of funds, and emotional distress.

## REQUESTED RELIEF

Plaintiff requests limited early discovery identifying the Doe officers and producing the denied identification and residential warrant records, followed by prompt amendment and service. The accompanying motion requests a procedurally appropriate order under Rules 26(d)(1) and 45.

Plaintiff requests compensatory damages for injuries caused by the proven constitutional violations and nominal damages where appropriate.

Plaintiff requests punitive damages against an individual defendant upon proof of evil motive or intent, or reckless or callous indifference to federally protected rights.

Plaintiff requests allowable costs, reasonable attorney's fees under 42 U.S.C. § 1988(b) to the extent lawfully available, and other appropriate relief.

Plaintiff demands a jury trial under Federal Rule of Civil Procedure 38 on all issues so triable.

Date: 10/27/2026 Signature: ______________________

Lucille M.R. Hernandez, Plaintiff pro se

P.O. Box 495, Stevens Point, WI 54481

Telephone: (715)7224125 Email: Lucillemarie2024@gmail.com